# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50255 | **DATE** | 2/13/2012 |
| **CASE TITLE** | Flint vs. Belvidere, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion to dismiss [10] is granted in part and denied in part. The motion is granted as to Counts III and IV and denied as to Counts I, II, and V.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

    Plaintiff, Candis M. Flint, individually and as the special representative of the estate of Marty Flint, has sued the City of Belvidere, Illinois, its Chief of Police Jan W. Noble, Sergeant Mark Pollack, and Officers Leon Berry and David Dammon. Plaintiff alleges federal civil rights violations and various state-law torts in connection with the shooting death of Marty Flint by an unknown assailant or assailants. Defendants have moved to dismiss. For the following reasons, the motion is granted in part and denied in part.

### I. ALLEGATIONS IN THE COMPLAINT

    Plaintiff and her son Marty Flint served as confidential informants for the Belvidere Police Department in exchange for promised leniency in the prosecution of Marty Flint. In that capacity, they arranged and made drug purchases from drug dealers who were then arrested and prosecuted. In the course of these arrests, plaintiff and Marty Flint were allowed to leave the scene of the drug transactions without being taken into custody. Plaintiff alleges further that:

24. Upon information and belief, Berry and Dammon told the arrested drug dealers that they were arrested and going to be convicted because Candis M. Flint and Marty Flint were confidential informants that set the drug dealers up for arrest and that when they testified in court the arrested drug dealers had no chance to defeat their arrests.

25. Further, Berry and Dammon would call Marty Flint and Candis M. Flint on various court dates of these arrested drug dealers and would tell them that Berry or Dammon needed to speak with them about certain issues and would refuses [sic] to discuss the purported issues on the telephone and demanded that each show up at the courthouse.

26. Berry and Dammon would have them [sic] Marty Flint or Candis M. Flint show up on court dates so the arrested drug dealers and their family and friends would see Marty Flint and Candis M. Flint were present to testify.

27. These intentional actions by Berry and Dammon created, or substantially contributed to the

| STATEMENT |
|---|

creation of, a danger to Marty Flint and Candis M. Flint and it rendered them more vulnerable to a danger to their physical well-being than they otherwise would have been likely to encounter.

Plaintiff and Marty Flint received numerous death threats throughout the year following the arrests of drug dealers Danny Holman, Crystola Medina and Quentin Overton, whom Plaintiff and Marty Flint set up. Plaintiff and Marty Flint became known in the vicinity of the cities of Belvidere and Rockford as informants and family and friends of the arrested drug dealers stated publicly that they were going to be killed for their participation in the various arrests. Marty Flint was accosted daily by residents who knew that Marty Flint was an informant. Despite their requests, plaintiff and Marty Flint were not protected or relocated by Berry, Damon, and Noble.

On November 9, 2009, Marty Flint was shot and killed as he sat in his van outside a convenience store in Rockford. Plaintiff alleges upon information and belief that the killer of Marty Flint is either a drug dealer that was arrested through the cooperation of Marty Flint or plaintiff or an agent of such a drug dealer. Plaintiff receives constant anonymous threats that she will be killed next and lives in constant fear.

In Count I of the complaint, plaintiff brings a Fourteenth Amendment due process claim pursuant to 42 U.S.C. § 1983 against Belvidere, Noble, and Pollack for failure to train Berry and Damon in the proper methods of using confidential informants in drug investigations.[1] In Count II, plaintiff brings a Fourteenth Amendment due process claim pursuant to § 1983 against Berry and Damon for failure to protect Marty Flint from a state-created danger which proximately caused his death.[2] In Counts III through V, plaintiff brings state-law wrongful death, intentional infliction of emotional distress (IIED), and indemnification claims, respectively.

## II. ANALYSIS

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In evaluating a motion to dismiss under Rule 12(b)(6), the court must consider whether plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the facts contained in the complaint, and all reasonable inferences are to be drawn in a light most favorable to the nonmoving party. In re marchFIRST Inc., 589 F.3d 901, 904 (7th Cir. 2009). A motion to dismiss should be granted if the plaintiff fails to offer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added). Federal Rule of Civil Procedure 8(a) requires "more than labels and conclusions," and merely offering "a formulaic recitation of the elements of a cause of action" is insufficient. Id. at 555. The complaint need not contain detailed factual allegations, however, legal conclusions "must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1940 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations and footnote omitted). The pleading rule does "not require heightened fact pleading of specifics," but nonetheless, plaintiffs must nudge "their claims across the line from conceivable to plausible." Id. at 570.

### A. § 1983 Due Process Claims in Counts I and II

In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the United States Supreme Court held that public failure to protect someone from private predation is not a constitutional tort. Thus, "[t]he Due Process Clause of the Fourteenth Amendment generally does not impose upon the state a duty to protect individuals from harm by private actors." Jackson v. Indian Prairie Sch. Dist. 204, 653 F.3d 647, 654 (7th Cir. 2011) (quotation marks omitted). One exception to this general rule is the state-created danger doctrine which "comes into play when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." Id. (quotation marks omitted). To state a claim under the state-created danger doctrine, plaintiff must sufficiently plead that: (1) defendants, by their affirmative acts, created or increased a danger that Marty Flint faced; (2) defendants' failure to protect him from that danger was the proximate cause of his murder; and (3) defendants' failure to protect him shocks the conscience. See id.

"Cases in which [the Seventh Circuit] ha[s] either found or suggested that liability attaches under the 'state-created danger' exception are rare and often egregious." Estate of Allen v. City of Rockford, 349 F.3d 1015, 1022 (7th Cir. 2003). Defendants contend that plaintiff has failed to allege facts sufficient to plausibly state prongs one and two.

As to the first prong, "the key question in determining whether state behavior violated the victim's constitutional rights is: What actions did the state actor affirmatively take, and what dangers would the victim otherwise have faced?" Windle v. City of Marion, Ind., 321 F.3d 658, 661 (7th Cir. 2003) (quotation and alteration marks omitted). Defendants argue that there is no allegation that defendants did anything affirmative to create or exacerbate the already dangerous situation in which plaintiff and Marty Flint put themselves or to render them more vulnerable to an existing danger. In response, plaintiff argues that she has alleged that Berry and Dammon acted affirmatively and put the lives of plaintiff and Marty Flint in more jeopardy than they otherwise would have been in by: (1) failing to arrest them at the drug transactions they arranged; (2) disclosing their identities as confidential informants to the drug dealers that they set up; and (3) causing them to be present at the court house on days when the drug dealers appeared in court.

The court agrees with plaintiff that an allegation of an unnecessary disclosure to an arrestee of the identity of the person who informed on him is an allegation of an affirmative act creating or increasing the danger to the person providing the information.[3] See Monfils v. Taylor, 165 F.3d 511, 520 (7th Cir. 1998) (upholding a jury verdict against a police officer who allowed an audio tape of an informant to be released to the person the informant implicated despite officer's knowledge that the tape's release would result in heightened danger to the informant, who was ultimately killed); McIntyre v. United States, 336 F. Supp. 2d 87, 114 (D. Mass. 2004) (stating that "revealing to known murderers that one of their associates is an informant, cooperating with the government, unquestionably endangers the safety of that informant" and concluding that "when plaintiffs allege[d] that, in disclosing the informant status of McIntyre to [known murders], [defendant FBI agent] acted affirmatively to put the life of McIntyre in jeopardy, they have sufficiently alleged a violation by [defendant FBI agent] of McIntyre's substantive due process right to be protected from the danger of the government's own creation"). Thus, the court finds that plaintiff has sufficiently pleaded the affirmative acts prong of the state-created danger doctrine.

Defendants maintain that Starr v. Sacluti, No. 09 C 4670, 2010 WL 276695 (N.D. Ill. Jan. 19, 2010), "is so factually similar to the case at bar as to be quite instructive." In particular, citing the first page of the Starr opinion, defendants represent that the court "concluded that public disclosure of a confidential informant's identity does not 'render them more vulnerable' to the danger of retribution." However, after carefully reviewing the Starr opinion, the court disagrees with defendants' characterization of the court's holding. Nowhere in the opinion, much less the first page, does the Starr court hold that public disclosure of a confidential informant's identity does not render the informant more vulnerable to the danger of retribution.

In Starr, the plaintiff alleged that the actions of the defendant officers with whom he had worked as a confidential informant, including the public disclosure of his identity as an informant, proximately caused his injuries which included threats to his life, forced involvement in drug smuggling, and expulsion from the University of Illinois. Id. at *1-2. In granting the defendants' motion to dismiss, the court essentially held that the causation element was not sufficiently pleaded because: (1) plaintiff "fail[ed] to clearly articulate a coherent theory as to how the actions of the defendant officers deprived plaintiff of a substantive due process right" and revealed the state-created danger theory only in his brief, id. at 4; and (2) plaintiff's alleged injuries, which occurred two years after plaintiff served as an informant, "were too attenuated from his active role as an informant," id. The court also noted that the most serious harm alleged resulted from the defendants' alleged failure to conceal themselves at a drug deal which was negligent and could not support a § 1983 claim. Id. Thus, contrary to defendants' suggestion in this case, the Starr court based its decision on a failure to sufficiently plead causation not a failure to adequately plead affirmative acts creating or increasing the danger facing the plaintiff.

| STATEMENT |
|---|

With regard to the causation prong, defendants argue that plaintiff pleads only that, "on information and belief," the murderer or murderers were sympathetic to someone plaintiff or Marty Flint helped to convict, but that there are no facts pleaded in support of that "information and belief," only speculation. Plaintiff has alleged, upon information and belief, that Marty Flint was murdered by a drug dealer, or the agent of a drug dealer, who was set up for arrest and prosecution by Marty Flint or plaintiff. Were this the only causation allegation, the court would be inclined to agree with defendants that plaintiff has pleaded conceivable, but not plausible, causation and therefore plaintiff has not raised the possibility of causation above the speculative level. See Twombly, 550 U.S. at 555. However, the foregoing allegation is supported by additional allegations that, in this court's judgment, nudge plaintiff's "claims across the line from conceivable to plausible." See Twombly, 550 U.S. at 570. In particular, plaintiff alleges that she and Marty Flint became widely known as confidential informants in Belvidere and Rockford. Plaintiff also specifically alleges that, prior to his murder, Marty Flint was accosted daily by residents who knew that he was a police informant and "[f]amily and friends of the arrested drug dealers stated publically that Marty Flint and plaintiff were going to be killed for their participation in the various arrests." In addition, plaintiff has alleged that after her son's murder, she received threats indicating that she would be next. These allegations of pre- and post-murder threats of retaliation for setting up various drug dealers plausibly establish a causal link between the alleged revelation of plaintiff's and Marty Flint's confidential informant status and Marty Flint's alleged retaliatory murder.

Defendants also argue that, like the allegations of the plaintiff in Starr, plaintiff's alleged injuries are too attenuated from hers and Marty Flint's active roles as confidential informants because plaintiff has alleged that the murderer is still unknown, the murder occurred outside Belvidere, and that neither she nor Marty Flint were working as informants at the time of the murder. The court disagrees. For the reasons stated in the preceding paragraph, the fact that the murderer is unknown does not make plaintiff's causation allegations implausible. Nor does the allegation that the murder took place in Rockford as opposed to Belvidere significantly detract from the plausibility that the murder was causally related to plaintiff's or Marty Flint's service as confidential informants in view of the proximity of these cities and plaintiff's allegation that she and Marty Flint became known in the vicinity of the cities of Belvidere and Rockford as informants. The fact that Marty Flint was not working as an informant at the time he was murdered does not make the allegation that the murder was retaliatory implausible. Unlike the plaintiff in Starr, plaintiff has not specifically pleaded the time between plaintiff's and Marty Flint's last service as informants and the murder. Moreover, plaintiff has pleaded that murder threats occurred within the year following the arrests of Holman, Medina, and Overton. Therefore, the court finds that plaintiff has sufficiently pleaded the causation prong of the state-created danger doctrine. Consequently, defendants' motion to dismiss Counts I and II is denied.

### B. State-Law Claims for Wrongful Death and IIED in Counts III and IV

Defendants also argue that plaintiff's state-law claims in Counts III and IV are barred by the one-year statute of limitations applicable to claims against governmental entities and employees set forth in § 8–101(a) of the Illinois Local Government and Governmental Employees Tort Immunity Act. See 745 ILCS 10/8-101(a). In response, plaintiff does not dispute that the Tort Immunity Act applies to the state-law claims brought against Belvidere and its employees, that the claims were not brought within the limitations period, or that the statute was in some manner tolled. Instead, plaintiff contends that the claims are not barred because the limitations period does not apply to willful and wanton conduct and deliberate indifference.

Generally, "[t]he statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint." Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 718 (7th Cir. 1993). However, "if a plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 608 (7th Cir. 1995). Where a defendant moves to dismiss a claim which on its face is outside the statute of limitations, plaintiff must articulate a valid reason for tolling the statute. Ray v. Maher, 662 F.3d 770, 773 (7th

| STATEMENT |
|---|

Cir. 2011) (affirming district court's Rule 12(b)(6) dismissal of claims on statute of limitations grounds and finding that "the plaintiff has presented no justifiable reason to toll the limitations period").

Governmental entities and their employees benefit from a one-year statute of limitations for "civil actions" against them such as state-law claims that are joined with § 1983 claims. Williams v. Lampe, 399 F.3d 867, 870 (7th Cir. 2005). Plaintiff has not directed the court to any authority to support her contention that there is a willful and wanton conduct exception to the one-year limitations period of § 8–101(a). The court's own research leads it to the opposite conclusion. See Luciano v. Waubonsee Cmty. Coll., 245 Ill. App. 3d 1077, 1086 (1993) (holding that "allegations of wilful and wanton conduct do not deprive a local public entity and its employees of the benefit of the shorter limitations period provided in section 8-101"). Consequently, the court is left to determine if plaintiff's wrongful death and IIED claims were filed within the one-year limitations period. "A wrongful death action will lie where the deceased had a claim that was not time barred on or before his death and accrues at the time of death of the decedent." O'Brien v. O'Donoghue, 292 Ill. App. 3d 699, 703 (1997) (citation omitted). "Emotional distress claims accrue on the date that the defendant committed the act that allegedly caused the plaintiff's distress." Turner v. McQuarter, 79 F. Supp. 2d 911, 918 (N.D. Ill. 1999). Accordingly, plaintiff's claims accrued, at the latest, on November 9, 2009, when Marty Flint was murdered. Consequently, plaintiff's claims in Counts III and IV needed to be filed by November 9, 2010, but were not filed until September 11, 2011. Therefore, plaintiff's state-law claims in Counts II and IV for wrongful death and IIED are time-barred.

### III. CONCLUSION

For the preceding reasons, defendants' motion to dismiss is granted in part and denied in part. The motion is granted as to Counts III and IV and denied as to Counts I, II, and V.

1. Count I appears to be a Monell claim to which defendants make no independent argument.

2. The complaint also contains allegations of a special relationship between Marty Flint and agents of the Belvidere Police Department, but plaintiff has now made clear that she is proceeding only under the state-created danger exception to the rule that police have no affirmative obligation to protect citizens from the violence of other citizens. See DeShaney v. Winnebago Cnty. Dept. of Social Servs., 489 U.S. 189, 195 (1989). Plaintiff's decision is logical in view of Seventh Circuit precedent finding that a noncustodial relationship between a confidential informant and police, absent more, is not a special relationship creating an exception to the DeShaney rule. See Dykema v. Skoumal, 261 F.3d 701, 706-07 (7th Cir. 2001).

3. The court does not read the allegations in the complaint to state that plaintiff and Marty Flint were summoned to court on dates that their testimony was actually required.